IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

DELLA PETERSON                                                       PLAINTIFF

V.                        NO. 2:06cv00040 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration[1]                                      DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff, Della Peterson, appeals from the denial of her claim for supplemental security income (SSI) benefits. The decision of the Administrative Law Judge (ALJ) has become the final decision of the Commissioner.

Judicial review of the Commissioner's denial of benefits examines whether the decision is based on legal error, and whether the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If it is possible to draw two inconsistent conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the Commissioner's decision must be affirmed. *Baldwin*, 349 F.3d at 555.

For the reasons that follow, the Court **affirms** the Commissioner's decision that Plaintiff is not disabled within the meaning of the Social Security Act and regulations and, therefore, is not entitled to SSI benefits.

---

[1]Michael J. Astrue was sworn in as the Commissioner of Social Security on February 12, 2007. He is therefore substituted for Jo Anne B. Barnhart pursuant to Fed.R.Civ.P. 25(d)(1).

## Background

In her application documents and at the hearing before the ALJ, Plaintiff alleged inability to work since January 1, 1993, due to vision problems, hearing loss, left hand numbness, acid reflux and headaches. (Tr. 58, 63, 71, 85-86, 94, 161-62.) Plaintiff was fifty-five years old at the time of the ALJ's decision and has a high school education. (Tr. 158-59.) At the hearing, Plaintiff testified that she was able to see newspaper print with her glasses, that she was comfortable driving, and that she could see the TV without glasses. (Tr. 162, 170.) At the hearing, her attorney questioned her from about two feet away and spoke "in a high volume." Plaintiff testified that she could not always hear normal conversation and that, even when someone was real close, she sometimes had a hard time understanding. She said she was not wearing hearing aids, and that she had an old one, but could not afford a new one. (Tr. 162-63.) She testified that, for the past seven months, she had been working in a restaurant three or four days a week, washing dishes and busing tables, and that she previously had worked one day a month as a marketing merchandiser/stock control clerk. (Tr. 159-60, 166, 168-69, 172.) She said that, in her current job, she could not hear her boss or other people, but that she was still able to do her job because she knew what to do. She said, if a customer asked her a question, she would just send someone else over. She said she told her boss when she started working that she had a hearing problem. (Tr. 163-164.) When asked if she had any trouble with standing, walking or lifting, she said she sometimes got her tub too full and had to get someone else to carry it back because it was too heavy. (Tr. 165.)

Under the applicable law, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The regulations provide a five-step process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work. *Id.*

Here, the ALJ found at step one that, although Plaintiff had some work activity, it did not appear that she had engaged in substantial gainful activity, as defined by the regulations, since her alleged onset date. The ALJ next determined, at step two, that Plaintiff suffered from severe impairments of hearing loss (status-post right tympanoplasty in 1994) and vision loss (status-post cataract extraction with intraocular lens placement of the right eye), but that none of her impairments equaled a step-three listed impairment as contained in the regulations. At step four, after consulting with a vocational expert, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform medium work, except where excellent hearing or vision is required, which would not preclude her past work as a stock control clerk or food preparation worker. The ALJ then proceeded to step five "in the interest of thoroughness" and, after again consulting with the vocational expert, the ALJ found that there were a significant number of other jobs consistent with Plaintiff's

vocational profile and limitations that she could perform. The ALJ thus concluded that Plaintiff was not disabled. (Tr. 12-16.)

Plaintiff argues that the ALJ erred (1) by failing to consider all of her alleged impairments, (2) in failing to properly evaluate her credibility, (3) in assessing her RFC, (4) in relying on vocational expert testimony that was based on a hypothetical that did not thoroughly describe her limitations, and (5) in failing to develop the record.

**Impairments in Combination**

First, Plaintiff contends that the ALJ failed to consider her impairments in combination because he did not "mention or address" her headaches, her left hand numbness, her acid reflux, the fact that she never had to lift more than ten pounds in her prior work, and her need to lie down several times a day.

In determining disability, the Social Security regulations require the Commissioner to consider "the combined effect" of all impairments without regard to whether any impairment, if considered separately, would be of sufficient medical severity to be disabling. 20 C.F.R. § 416.923; *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

Here, the ALJ's opinion stated that Plaintiff was alleging disability "due to multiple impairments" and that he gave "careful consideration [to] the entire record." (Tr. 12, 15.) The ALJ summarized the medical evidence regarding her vision and hearing impairments and then, contrary to Plaintiff's assertions, he expressly noted her allegations of headaches, acid reflux and left hand numbness, but found there was no information in the medical record regarding those conditions. (Tr. 13.) Although he did not refer to the representations in her application paperwork about lifting no more than ten pounds in her

4

stock control clerk job or the need to lie down frequently (Tr. 87, 95), that does not mean he did not consider them. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). An ALJ is not required to discuss all evidence submitted. *Id.*

In evaluating the credibility of Plaintiff's subjective complaints, the ALJ stated that her allegations were not borne out by "the overall record." (Tr. 15.) In assessing the severity of her alleged impairments at step two, the ALJ found that the evidence did not document "the existence of any impairment or combination of impairments" that met or equaled the level of severity for any listed impairment, and that she did not have "an impairment or combination of impairments listed in (or medically equal to)" a listed impairment. (Tr. 13, 15.) In determining her RFC, the ALJ stated that he had evaluated "all of the relevant evidence" and that his assessment was "consistent with the record as a whole." (Tr. 13, 15.)

This record is sufficient to demonstrate that the ALJ considered Plaintiff's impairments in combination, as required by the regulations. *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (where ALJ found claimant did not have impairment or combination equaling listing-level impairment and referred to evidence as a whole, ALJ properly considered combined effect of impairments).

## Credibility

Next, Plaintiff asserts that the ALJ's credibility analysis is flawed because: (1) he did not cite reasons supported by the evidence; (2) he did not properly apply the factors established by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), and SSR 96-7p; (3) he

5

selectively cited evidence and found inconsistencies based on an unrealistic evaluation of her abilities; and (4) he improperly discredited the testimony of Plaintiff's husband.

A claimant's subjective complaints may be discounted if they are inconsistent with the evidence as a whole. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The ALJ is in the best position to gauge credibility and is granted deference in that regard as long as his credibility determinations are supported by good reasons and substantial evidence. *Id.* The Social Security regulations and rulings identify a number of factors for the ALJ to consider in assessing credibility, most of which were set forth in *Polaski*. 20 C.F.R. § 416.929(c)[2]; Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3, *5 (S.S.A. 1996). However, an ALJ need only acknowledge and consider these factors, and need not explicitly discuss each one. *Goff v. Barnhart*, 421 F.3d 785, 791-92 (8th Cir. 2005).

Here, the ALJ stated that he had considered Plaintiff's subjective allegations pursuant to the guidelines of SSR 96-7p and *Polaski*. (Tr. 14.) His analysis substantively and adequately covered the relevant considerations, even though he did not specifically discuss each one in depth. Moreover, as explained below, his findings were supported by the record and constitute valid reasons for discounting Plaintiff's credibility.

First, the ALJ stated that the medical findings in the record were not consistent with the disabling level of hearing and vision loss alleged by Plaintiff, and that no physician had

---

[2]As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

imposed on her the alleged level of functional limitations. He also noted that she did not wear a hearing aid or use a phone amplifier. (Tr. 13, 14.)

An audiogram performed in December 2003 showed that Plaintiff had moderate hearing loss in the left ear and moderate-to-severe hearing loss in the right ear with a conductive component. However, the consulting physician stated that Plaintiff's understanding was "excellent" with 88% in the right ear and 92% in the left ear with amplification. (Tr. 108-09.) For her vision, she underwent cataract surgery on her right eye in February 2004. Before surgery, she had <u>corrected</u> vision of 20/80 and 20/40, (Tr. 116); afterwards, her <u>uncorrected</u> vision was 20/70 (with pinhole acuity of 20/50) and 20/200 (with pinhole acuity of 20/40), (Tr. 110). In February 2005, she was noted as having <u>uncorrected</u> vision of 20/25 in both eyes.[3] (Tr. 143.) Plaintiff testified that, with her glasses, she was able to read the newspaper and could drive, and that she could watch TV without glasses. (Tr. 162, 170.) None of her doctors placed any restrictions on her activities or stated that she was totally unable to work due to her vision or hearing difficulties.

The lack of corroborating medical records or restrictions by any treating or examining physician are valid reasons for discounting the credibility of subjective complaints. Additionally, a condition that is correctable or amenable to treatment cannot be considered disabling, and a claimant's failure to undertake such remedial measures has

---

[3]To put this in perspective, to be considered presumptively disabled under the regulatory listings for loss of visual acuity, a claimant must have "remaining vision in the better eye after best correction [of] 20/200 or less." 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 2.00, 2.02. *See Goodale v. Halter*, 257 F.3d 771, 772 n.2 (8th Cir. 2001) (visual acuity of 20/40 in both eyes "is hardly disabling").

a bearing on credibility. *See Travis v. Astrue*, No. 06-2142, 2007 WL 601511, at *5 (8th Cir. Feb. 28, 2007) (record did not support allegations of constant, unremitting pain where little medical evidence supported allegations); *Baker v. Barnhart*, 457 F.3d 882, 893-94 (8th Cir. 2006) (subjective complaints of pain were properly discredited where doctors found no medical explanation for claimant's pain, and claimant chose not to take pain medication or undertake recommended physical therapy); *Pelkey v. Barnhart*, 433 F.3d 575, 578-79 (8th Cir. 2006) (ALJ's decision to discount subjective complaints was supported by absence of any medical opinion that claimant was unable to work, as well as state medical consultant's determination that he could do light work); *Goff*, 421 F.3d at 792-93 (proper to discount allegations of disabling pain due to lack of corroborating medical evidence); *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (absence of supporting medical evidence, infrequent pursuit of treatment, and failure to follow the treatment prescribed are valid bases for discounting subjective complaints); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (ALJ may consider absence of opinion of disability from treating physician); *Baldwin*, 349 F.3d at 557 (none of claimant's physicians restricted or limited his activities); *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001) (ALJ properly based credibility determination on his observations of claimant's demeanor at hearing, evidence that medication and speech therapy improved claimant's communicative ability and mental condition, and evidence that claimant had failed to strictly follow prescribed treatment).

Plaintiff reported that she did not use hearing aids or a phone amplifier (Tr. 80, 92), and she testified at the administrative hearing that she had an old hearing aid that did not work, and had not explored the possibility of getting new hearing aids because she could not afford them. (Tr. 163.) Her claim of financial hardship cannot wholly excuse her failure

to alleviate her hearing difficulties through the use of these corrective devices. There is no evidence that she has attempted to have the old hearing aid repaired,[4] that she has investigated community resources for obtaining low-cost or refurbished hearing aids, or that she has been denied assistance due to her poverty. *See Goff*, 421 F.3d at 793; *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).

Plaintiff's application papers mentioned headaches, left hand numbness and acid reflux; however, the ALJ did not find that these constituted "severe" impairments due to the lack of supporting evidence in the medical records. (Tr. 13.) The records from Plaintiff's medical providers do not show complaints of, treatment for, or reported medical history of left hand numbness or headaches, other than related to allergies or her eye problems. (Tr. 102, 106, 108, 126, 146.) She said she took Advil for headache pain. (Tr. 94.) The "coding summary" upon admission for her cataract surgery in February 2004 indicates a "secondary diagnosis" of "esophageal reflux," (Tr. 111), and another notation in March 2004 shows that she reported taking over-the-counter medication for heartburn, (Tr. 126). However, these passing references – with nothing else to back them up – do not demonstrate the existence of a "severe" impairment that, as required by the regulations, "significantly limits the claimant's physical or mental ability to do basic work activities." 20 C.F.R. § 416.921 (defining "severe"). Infrequency of medical treatment, or the need for treatment with only over-the-counter medications, are sufficient reasons for an ALJ to

---

[4] At a hearing aid fitting in 1995, she reported that she could not afford a new hearing aid and had an old one, but was not sure if it worked. She was advised that the standard repair fee was $90. (Tr. 98.)

discount the alleged severity of a condition. *Kelley*, 372 F.3d at 961; *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

Next, the ALJ found that Plaintiff's daily activities were inconsistent with the alleged level of disability. (Tr. 14.) The ALJ also stated that Plaintiff's part-time work in a restaurant provided "compelling evidence regarding [her] current capacity for work activity." (Tr. 12.) Again, these findings are supported by the record. Plaintiff reported that her daily activities included bathing, dressing, and doing her hair; doing laundry and dishes, changing sheets, ironing, vacuuming/sweeping, and taking out trash; shopping for groceries and clothes; going to the bank and post office; preparing meals seven times a week; paying bills, using a checkbook and counting change; and watching TV, playing video games, reading, quilting, embroidering, and doing puzzles. (Tr. 80-81, 92-93, 164-65.) In addition, she worked up to four days a week at a restaurant, washing dishes and busing tables. (Tr. 159-60.) Many of these activities require good visual acuity, some communication skills and/or physical strength and stamina, all of which are inconsistent with Plaintiff's allegations of disabling impairments. In addition, she said her disabilities had never forced her to quit a job or be fired. (Tr. 81, 93.) She also testified at the administrative hearing that she was able to drive, (Tr. 159), contradicting her earlier statements in her application paperwork that she could not drive, (Tr. 81, 93). *See Goff*, 421 F.3d at 792 (claimant's credibility was diminished by her work as part-time kitchen aide, and her ability to vacuum, wash dishes, do laundry, cook, shop, drive and walk); *Harris*, 356 F.3d at 930 (part-time work is inconsistent with claim of disabling pain); *Baker*, 457 F.3d at 893-94 (ALJ could properly discredit subjective complaints of pain where claimant was capable of full self-care, drove every day, shopped and ran errands, could

10

use a chain saw to trim tree branches, chose not to take pain medication or undertake recommended physical therapy, and exaggerated his symptoms).

Finally, the ALJ acknowledged the testimony of Plaintiff's husband, but discounted it as based on "uncritical acceptance of the claimant's complaints and, to some degree, [as] motivated by the desire to see her obtain benefits." (Tr. 14.) These are permissible reasons for discounting the husband's testimony. *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006). Moreover, he was asked only five questions: (1) his name; (2) if he was Plaintiff's husband; (3) if he had anything to add to her testimony to help explain why she was not able to work ("[N]aturally, her hearing is one problem, but also – well, I don't know. I can't think of much else."); (4) if there was anything she needed to see a doctor about but could not due to the lack of insurance ("Well, nothing right now that I know of."); and (5) whether he was retired or still working ("No, sir. I'm on disability myself."). (Tr. 165-66.) Considering these responses, the husband's testimony did not merit much discussion by the ALJ.

Based on the record as a whole, the ALJ properly discounted Plaintiff's subjective complaints, and this Court will defer to that credibility determination.

### **Residual Functional Capacity**

Residual functional capacity (RFC) is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite his or her physical or mental limitations. 20 C.F.R. § 416.945(a)(1), (b) & (c). The ALJ bears the final responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his

11

or her limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *see* 20 C.F.R. §§ 416.927(e)(2), 416.945(a)(3). Nevertheless, the burden of establishing the RFC rests on the claimant, not the Commissioner. *Eichelberger*, 390 F.3d at 591-92. While the Commissioner must "make every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources," the claimant is responsible for providing the evidence to be used in making an RFC finding. 20 C.F.R. §§ 416.945(a)(3), 416.912(c) & (d).

Here, the ALJ determined that Plaintiff had the RFC to perform medium work not requiring excellent hearing or vision. (Tr. 15.) As defined by the regulations and rulings, medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of up to twenty-five pounds, and standing or walking, off and on, for approximately six hours in an eight-hour workday. 20 C.F.R. § 416.967(c); Soc. Sec. Rul. 83-10, 1983 WL 31251, *6 (S.S.A. 1983). Plaintiff argues that the ALJ erred in making this assessment because: (1) he did not address whether she has the ability to work on a "regular and continuing basis"; (2) he failed to perform a function-by function assessment of her work-related abilities and did not explain the evidence supporting his conclusion that she can engage in the physical activities required for medium work; (3) the RFC assessment has no supporting medical basis because the ALJ failed to obtain a functional assessment by a treating or examining physician; and (4) the ALJ failed to consider all of her impairments and limitations, including headaches, acid reflux, left hand numbness, vision problems and the need for daily naps.

By definition, RFC is a measure of a claimant's ability to perform work on a regular and continuing basis; therefore, it was unnecessary for the ALJ to make a specific finding

in this regard. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). There is no contention or evidence that the nature of Plaintiff's hearing and vision impairments fluctuated so as to preclude her from maintaining regular, continuous employment. The fact that her only past work was on a part-time basis does not necessarily mean that she could not perform such work full-time. *See Harris*, 356 F.3d at 929-30 (part-time work supported RFC determination); *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) (part-time work supported ALJ's conclusion that claimant could perform light work on a sustained basis).

Next, while specific function-by-function findings are preferable, an ALJ's RFC assessment is not erroneous where the record reflects that he implicitly found no limitation in the functional areas he omitted from his RFC. *Depover*, 349 F.3d at 567-68. Here, the ALJ clearly rejected Plaintiff's subjective complaints of impairments other than those related to her vision and hearing. Additionally, Plaintiff submitted no evidence – medical or otherwise – suggesting that she could not perform the physical activities of medium work. When asked what conditions limited her ability to work, she stated, "My hearing and sometimes my eyesight." (Tr. 162.) When asked if she had any trouble with standing, walking, lifting or other physical demands of her restaurant job, she said she sometimes got her tub too full (presumably while busing tables) and had to get someone else to carry it because it was too heavy for her to lift. (Tr. 165.) In her previous job as a stock control clerk, she said the heaviest weight she ever had to lift was ten pounds (Tr. 87), but she never said she was unable to lift more than that. She said she had not seen any doctors lately about anything other than her hearing and vision. (Tr. 165.) Her husband stated that hearing was her problem and he "can't think of much else." (Tr. 166.) Plaintiff expressed

little or no physical difficulty in carrying out the duties of her current job which, according to the Dictionary of Occupational Titles (DOT), is performed at the medium work level, or her past job as a stock control clerk, classified as light work. DOT § 219.387-030 (stock control clerk/inventory clerk), § 311.677-018 (dining room attendant/bus person), § 318.687-010 (kitchen helper) (4th ed. 1991). As stated, the ALJ properly discredited Plaintiff's allegations of any impairment due to headaches, left hand numbness and acid reflux. Although she stated in a September 2003 questionnaire that she needed two or more naps daily (Tr. 94, 95), this is inconsistent with other statements in the record that she did not require naps and had no unusual fatigue, (Tr. 82, 94). Neither she nor her husband testified at the hearing about the need for frequent napping, and nothing in the medical records supports such a restriction. Under these circumstances, the ALJ did not err in failing to set out a function-by-function analysis of the physical requirements of medium work, or in failing to assess any physical restrictions unrelated to her vision or hearing.

Moreover, the ALJ adequately accounted for Plaintiff's vision and hearing impairments by limiting her to jobs not requiring excellent hearing or eyesight. *See Lacroix v. Barnhart*, 465 F.3d 881, 888-89 (8th Cir. 2006) (where claimant testified that hearing aid helped her and ALJ was able to evaluate her hearing limitations first-hand, RFC assessment adequately accounted for moderate-to-severe hearing loss by excluding her from jobs requiring excellent hearing). In doing this, he utilized the services of the vocational expert in determining the extent to which such limitations would affect Plaintiff's ability to perform the type of work she had performed in the past. *See Banks v. Massanari*, 258 F.3d 820, 827-28 (8th Cir. 2001) (although not required, an ALJ may use a vocational

14

expert at step four in assessing a claimant's RFC and determining whether he can perform his past work); 20 C.F.R. § 416.960(b)(2).

The ALJ's RFC assessment is also consistent with the medical opinion of state agency medical consultant, Robert M. Redd, as reviewed and affirmed by Dr. Jerry L. Thomas, an agency physician, on March 19, 2004. (Tr. 131-38.)[5] The ALJ said he had considered this opinion. (Tr. 15.) Although the agency physicians did not have the benefit of additional medical records regarding Plaintiff's vision problems, those records do nothing to undermine their conclusion that she was not suffering from any other disabling physical conditions. The regulations recognize that state agency medical consultants are "highly qualified physicians ... who are also experts in Social Security disability evaluation. Therefore, administrative law judges <u>must</u> consider" their opinions. 20 C.F.R. §§ 416.913(c), 416.927(f)(2)(i) (emphasis added). The medical opinions of the stage agency physicians, along with the rest of the record, constitute substantial evidence to support the ALJ's RFC determination, especially where those opinions are uncontradicted by any other medical evidence in the record. *See Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (state agency RFC assessments and claimant's reported daily activities were substantial evidence to support RFC determination); *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) (where ALJ did not rely solely on non-examining physician's opinion in assessing RFC, substantial support existed for ALJ's findings).

---

[5] The agency physicians reviewed the medical evidence in the file and concluded that Plaintiff could occasionally lift/carry fifty pounds, could frequently lift/carry twenty-five pounds, could sit/stand/walk (with normal breaks) about six hours in an eight-hour workday, and had unlimited ability to push/pull, and no postural, manipulative, visual, communicative or environmental limitations, other than that she should not work where excellent hearing is required.

Finally, the ALJ did not err in failing to recontact Plaintiff's physicians or order a consultative examination regarding her physical conditions and functional limitations. Plaintiff's disability forms do not list any medical providers other than the ones she visited for her vision and hearing problems (Tr. 64-65, 72, 88), and she and her husband both testified that she had not seen other doctors for any other conditions (Tr. 165, 166). The record was fully developed regarding her vision and hearing impairments, and there is no indication that any of her treating physicians could have offered a functional assessment of her physical abilities. *See Stormo*, 377 F.3d at 806 (only necessary to seek clarifying statements from a treating physician when a crucial issue is undeveloped).

Additionally, a consultative examination was ordered with respect to Plaintiff's hearing impairment (Tr. 108-09), and an ALJ is not required to order a consultative evaluation of every impairment that is alleged. *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989); *see* 20 C.F.R. § 416.912(f), § 416.917-919t (authority and procedures for ordering consultative examinations). While the ALJ has a duty to ensure that the record is fully and fairly developed, *Stormo*, 377 F.3d at 806, this does not absolve the claimant of his responsibility to provide evidence establishing the severity of his alleged impairments, 20 C.F.R. § 416.912(c), or to provide evidence to be used in making an RFC finding, *id.* § 416.912(c), § 416.945(a)(3). The claimant is in the best position to provide information about his own medical condition. *Yuckert*, 482 U.S. at 146 n.5. The claimant thus has the burden of making sure that the record contains sufficient evidence to suggest a reasonable possibility that a severe impairment exists. *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). Where, as here, the claimant is represented by an attorney experienced in Social Security law, the ALJ "should ordinarily be entitled to rely on the

16

claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Id.*

As stated, Plaintiff's testimony elicited by her attorney and the ALJ focused on her vision and hearing impairments, and her brief references to other conditions in her application papers – which neither she, her witness, nor her counsel pursued at the hearing – were insufficient to establish the existence of other severe impairments or to prompt the ALJ to order a consultative evaluation or otherwise develop the record regarding them. As explained above, other evidence in the record was also inconsistent with any claim of physical disability unrelated to her vision or hearing. Moreover, the fact that Plaintiff's counsel did not obtain (or, as far as the record reflects, try to obtain) any additional medical records or a functional evaluation of her physical abilities suggests that such evidence would not have been helpful to Plaintiff's application. *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995).

Under these circumstances, Plaintiff's arguments regarding the RFC determination must be rejected.

## **Vocational Expert Testimony**

At step five of the sequential analysis, the Commissioner bears the burden of showing that jobs exist in significant numbers which a person with the claimant's RFC can perform. 20 C.F.R. § 416.960(c)(2). The Commissioner may rely on a vocational expert's response to a properly phrased hypothetical question to satisfy this burden. *Sultan v. Barnhart*, 368 F.3d 857, 864 (8th Cir. 2004). Here, Plaintiff argues that the ALJ erred in relying upon the testimony of the vocational expert at step five because the hypothetical

posed to him did not thoroughly describe or incorporate all of Plaintiff's limitations, and because the ALJ misstated Plaintiff's age.

The Commissioner concedes that the ALJ's *decision* misstates Plaintiff's age as fifty-four, rather than fifty-five. (Tr. 12, 16.) However, the ALJ *did not* use this incorrect age in framing the hypothetical to the vocational expert at the hearing, and nothing in the record suggests that the expert used an incorrect age in reaching his conclusion. Plaintiff testified at the hearing that her birth date was June 15, 1950, and that the date of the hearing (June 15, 2005) was her fifty-fifth birthday. (Tr. 158.) The vocational expert was present during Plaintiff's testimony, and he testified that he had reviewed the evidence of record regarding her. (Tr. 156, 171.) The ALJ posed the following hypothetical:

> Dr. Sales, please assume you are dealing with an individual **who is the same age as the claimant** with the same educational background and past work experience. Further assume that the individual retains the residual functional capacity for medium work with the following additional limitations: This hypothetical individual would not be able to work in a work setting where excellent hearing would be required. This hypothetical individual would not be able to work in a work setting where excellent vision is required. Could that hypothetical individual – now, we don't have past relevant work, but we do have that work she did for that four or five year period. Could, could that hypothetical individual perform that work?

(Tr. 171-72) (emphasis added). The expert responded that such an individual would be able to perform work as a stock control clerk, certain jobs in the food preparation category (kitchen workers, table attendants, cleaners, preparers of salad), or work as a cleaner or maid. (Tr. 172-73.) He said there were about 4,000 such jobs in Arkansas, 1,800 in the Memphis area, and 130,000 in the United States. (Tr. 173.)

Therefore, the ALJ's later misstatement of Plaintiff's age has no bearing on the vocational expert's testimony.

18

Additionally, the ALJ did not err in only incorporating Plaintiff's hearing and vision impairments into the hypothetical. The ALJ's hypothetical question to a vocational expert needs to include "only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix*, 465 F.3d at 889. Inasmuch as the ALJ had properly discredited Plaintiff's other allegations, it was not error for him to exclude them from the hypothetical question.

Under these circumstances, the ALJ did not err in relying on the vocational expert's testimony at step five.

### **Duty to Develop Record**

Finally, Plaintiff argues that the ALJ should have further developed the record with respect to: (1) the severity of all of her alleged impairments, (2) the credibility of her subjective complaints of pain and limitations, (3) the credibility of the lay testimony, (4) whether any of her jobs were actually substantial gainful activity, (5) her RFC in light of all relevant evidence, (6) the completion of mental/physical functional capacity evaluations by a treating physician, and (7) vocational expert testimony in response to a proper hypothetical question. To the extent that the ALJ's failure to develop the record in any of these areas was not specifically addressed in the previous discussion, reversal or remand is not justified because any such failure was not unfair or prejudicial to Plaintiff. She has not demonstrated the existence of any "undeveloped" evidence which might have altered the outcome of the disability determination. *Snead v. Barnhart*, 360 F.3d 834, 839 (8th Cir. 2004).

**Conclusion**

After a careful review of the evidence, the Court finds that Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision.

ACCORDINGLY, the final decision of the Commissioner is **affirmed** and Plaintiff's case is **dismissed** with prejudice.

IT IS SO ORDERED this 22nd day of March, 2007.

_____
UNITED STATES MAGISTRATE JUDGE